# ATTACHMENT

# A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Nicholas Brown, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>Kalshi Inc.,<br><br>*Defendant*. | Case No. 2:26-cv-~~1426~~01426-LK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |



Kothari Law LLC
555 SE Martin Luther King
Suite 3022
Portland, OR 97214
503-567-6735

**Table of Contents**

I. Introduction. ....... 2
II. Parties. ....... 3
III. Jurisdiction and Venue. ....... 3
IV. Facts. ....... 5
V. Class Action Allegations. ....... 21
VI. Claims. ....... 22
VII. Jury Demand. ....... 27
VIII. Prayer for relief. ....... 27



Kothari Law LLC
555 SE Martin Luther King
Suite 3022
Portland, OR 97214

**I. Introduction.**

TextElectronic mail messages are a simple, straightforward wayways to communicate and stay

1. in touch with friends, family, and colleagues. Billions of such text messages are sent every day.

2. Businesses also use textelectronic mail messages to advertise their sales, products, and services. Some consumers want to receive these These commercial text messages about products or sales,may be unfair and they give companies their consentdeceptive, making false and misleading claims to entice consumers to receive them. But other times,use a business's services.

3. "Defendant Kalshi Inc. ("Kalshi") initiated and assisted in sending an unfair and deceptive commercial textelectronic mail message to Plaintiff Nicholas Brown ("Plaintiff"), a citizen of the state of Washington.

4. The message to Plaintiff is part of Kalshi's marketing campaign, which includes sending commercial electronic mail message to other Washington consumers. Kalshi has enlisted its existing clients as marketing agents through a program whereby the company creates messages are sent to consumers who never consented to the texts, and do not want to receive them. More and more people are receiving unwanted commercial textfor its clients to send to the client's contacts. The messages about products or servicesentice consumers to sign up for Kalshi and receive $25.00 "to trade on Kalshi." Kalshi also pays its client agent $25.00 if the consumer in fact signs up.

2. In the messages, Kalshi falsely and misleadingly portrays itself as a trading platform; but, in reality, Kalshi is an online gambling platform that they have no interest in hearing about.

5. To protect Washington residentsviolates a litany of provisions of the Washington Gambling Act. Kalshi specifically includes gambling on events that occur in the state of Washington, from receiving unwanted text messages from businesses,sports to elections.

6. The messages' false portrayal of Kalshi's services violates both the Washington legislature passed the Commercial Electronic Mail Act (("CEMA"). "), RCW 19.190 and the Washington Consumer Protection Act ("CPA"), RCW 19.86

3. CEMA prohibits companies conducting business



Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

~~in the state of Washington from~~, *inter alia*: (a) initiating the transmission, conspiring with another to initiate the transmission, or assisting ~~in~~ the ~~sending~~transmission, of a commercial ~~text messages to Washington residents, unless the recipient has "clearly and affirmatively consented."[1]~~electronic mail message with a subject line that contains false or misleading information; (b) assisting in the transmission of a commercial electronic mail message while knowing that sending the message is an act that violates the CPA; and (c) sending a commercial electronic mail message that contain false or misleading

~~4. Defendant Kalshi Inc. ("Kalshi") does business in the State of Washington. It is a prediction market exchange that allows users to trade contracts on the outcome of real-world events, such as elections, economic indicators, and weather outcomes. Kalshi initiates and~~

~~5.~~7. ~~assists in the transmission of illegal, commercial text messages to Washington residents who have not given their clear and affirmative consent (or any consent at all).~~information in the subject line. *See* RCW 19.190.020 and 19.190.030. Here, Kalshi did all of these things.

**II. Parties.**

~~6.~~8. Plaintiff Nicholas Brown is domiciled in Ephrata, Washington.

~~7.~~9. The proposed class includes citizens of Washington.

~~8.~~10. Defendant Kalshi Inc. is a Delaware corporation with its principal place of business at 594 Broadway, Suite 407, New York, NY 10012

**III. Jurisdiction and Venue.**

~~9.~~11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Kalshi.

~~10.~~12. This Court has personal jurisdiction over Kalshi. Kalshi does business in Washington. It advertises and sells its products and services in Washington~~,~~ and serves a market for its products and services in Washington. Due to Kalshi's actions, its commercial ~~text~~electronic mail

~~[1] The prohibition is subject to some exceptions that do not apply here. *See* RCW 19.190.060, 19.190.70.~~



Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

messages have been sent, without consent, to ~~telephone numbers assigned to~~cellular telephones of Washington residents and harmed Washington residents, including in an attempt to get additional people who are citizens of Washington to purchase the very services that it provides to many other Washington citizens. Plaintiff's claims arise out of Kalshi's contacts with this forum. Due to Kalshi's actions, Plaintiff received Kalshi's commercial ~~text~~electronic mail message in Washington, and he was harmed while in Washington.

13. Kalshi specifically markets its service to Washington citizens, including as follows:




At the time this lawsuit was filed, the services Kalshi provided to Washington

14. citizens included betting on Washington sporting events and Washington political races (including the 2026 House primaries in Washington congressional districts).

~~11.~~15. Venue is proper under 28 U.S.C. § 1391(b)(2) because Kalshi conducts significant business transactions within this District~~ and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.~~. Venue is additionally proper under 28 U.S.C. § 1391(d) because Kalshi would be subject to personal jurisdiction in this District if this District were a separate state. Kalshi advertises and sells its products and services to customers in this District~~,~~ and this District serves as a market for Kalshi's products and services, and Plaintiff's claims arise out of Kalshi's contacts in this forum.


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

## IV. Facts.

### A. Washington's Commercial Electronic Mail Act.

16. ~~Americans receive billions~~CEMA works hand-in-glove with the CPA to stop the practice of ~~unwanted~~sending commercial ~~text~~electronic mail messages that are unfair or deceptive.

17. CEMA places a series of prohibitions on commercial electronic mail messages that are false, misleading, unfair, or deceptive.

~~12.~~18. Under RCW 19.190.020(1)(b), "No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from ~~businesses each year.~~a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that: . . . (b) Contains false or misleading information in the subject line."[2]

~~13. To stop this practice, the state of Washington passed the Commercial Electronic Mail Act (CEMA). CEMA states, in relevant part, "no person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a Washington resident" unless the recipient has "clearly and affirmatively consented in advance to receive those messages." RCW §§ 19.190.060-19.190.070.[3]~~

19. ~~The statute further states that~~ CEMA also states in relevant part: "It is a violation of the ~~provision is "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying~~ consumer protection act, chapter 19.86 RCW, to conspire with another person to initiate the transmission or to initiate the transmission of a commercial electronic mail message that: . . . (b) Contains false or misleading information in the subject line." RCW 19.190.030(1)(b).

20. More broadly, CEMA also protects consumers from commercial electronic mail

---

[2] This section of CEMA has been amended and has not changed, with an effective date of June 11, 2026.

~~[3] The statute contains exceptions that do not apply here. *See, e.g.*, RCW §19.190.070 (exception for texts "transmitted at the direction of a person offering cellular telephone or pager service to the person's existing subscriber at no cost to the subscriber").~~

messages that violate the CPA, including under RCW 19.190.30(2), which provides as follows: “It is a violation of the consumer protection act~~.” *Id.*~~, chapter 19.86 RCW, to assist in the transmission of a commercial electronic mail message, when the person providing the assistance knows, or consciously avoids knowing, that the initiator of the commercial electronic mail message is engaged, or intends to engage, in any act or practice that violates the consumer protection act.”

~~14.~~21. “Thus, a violation of CEMA also violates ~~Washington’s Consumer Protection Act~~’the CPA, which broadly prohibits “unfair or deceptive acts or practices in the conduct of any trade or commerce.” RCW~~ §~~ 19.86.020.

**B. Kalshi’s “Refer a friend” Program.**

~~15.~~ Kalshi ~~runs a prediction market exchange that allows users to trade contracts on the outcome of real-world events, such as elections, economic indicators, and weather outcomes.~~

~~16.~~22. ~~It~~ promotes its product to consumers by using a “Refer a friend” program.[4] The “Refer a friend~~"~~” program pays existing users referral bonuses for referring their ~~friends~~contacts to




~~trade~~bet on Kalshi.

[4] Kalshi also sometimes refers to it as its “Refer a friend” program.


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214




~~17.~~23. Through its "Refer a friend" program, Kalshi asks existing users to refer friends using a special link created by Kalshi. Existing users are directed to ~~text~~send their friends the Kalshi link and "Refer a friend" offer. If the friend uses the link to sign up for a Kalshi account and meets certain other requirements, the referrer (that is, the existing Kalshi user) receives an award that can


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

be used for ~~trading on~~placing bets through the Kalshi platform.[5]

~~18.~~24. Kalshi's "Refer a friend" program can be used via its mobile app. Existing users can access the "Refer a friend" ~~prog ram~~program through the app:







[5] Kalshi Referral FAQ found at https://help.kalshi.com/account/signing-up/signing-up-as-an-individual/referral-faqs (last accessed February 18, 2026) and archived at https://archive.ph/YyDKd.


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

~~19.~~25. To take advantage of the program, existing users click the "Get $10" button on the app. Kalshi then generates a referral link and composes a ~~text~~ message for sharing with contacts. ~~And, users~~Users then send the message and link to their contacts. Clicking the "Share link" button above creates a ~~text~~ message. An example of the ~~text~~ message is shown below:




~~20.~~26. Kalshi's "Refer a friend" program can also be accessed through the website. A screenshot of the webpage is depicted below:


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214




~~21.~~27. After the user clicks the "Invite friends" button, Kalshi generates a referral link, and directs existing users to copy the referral link:




~~22.~~28. Existing users copy the referral link, paste it into a messaging platform, and send the messages and link to their friends.

29. Despite having the ability, Kalshi made no effort to warn its users against sending the referral link to consumers in Washington, or to prevent its Washington users from sending out the referral link.

## C. Kalshi Operates an Illegal Gambling Enterprise that Violates the Washington Gambling Act.


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

30. Kalshi operates an illegal, unlicensed online gambling enterprise that violates multiple provisions of the Washington Gambling Act, RCW 9.46.

31. While Kalshi markets itself as a trading platform, Kalshi actually runs a gambling website that allows users to bet on the outcome of real-world events, such as sports, elections, politics, and entertainment. Indeed, Kalshi advertises that it has "cracked the code on legal betting in all 50 states" for "sports markets" and "everything else."




32. Kalshi's platform became publicly available in 2021, initially offering a limited selection of topics. Over time, Kalshi rapidly expanded both the scope of its offerings and the reach of its platforms. By 2024, Kalshi began allowing bets on politics.

33. Kalshi's political betting offerings include primary and general election outcomes, voter turnout, party control of Congress, and results in swing states. For example, bettors could wager on the outcome of the 2024 Washington gubernatorial election, the 2026 House primaries in Washington congressional districts, the 2028 Washington gubernatorial race, which party will control the Washington State Senate in 2028, and the outcome of the 2028 U.S. presidential election.

34. Kalshi engages in illegal and unlicensed gambling by allowing Washington residents to risk a "thing of value" on "contests of chance" and future contingent events for financial payouts without a valid state license. See RCW 9.46.0225; RCW 9.46.0237; RCW 9.46.0285; RCW 9.46.160.

35. Furthermore, by acting as a commercial betting exchange that charges transaction fees on every wager, matches opposing bettors, and provides market liquidity through its affiliated entity, Kalshi Trading, Kalshi engages in unlawful "professional gambling" and "bookmaking." RCW 9.46.180; RCW 9.46.0213; RCW 9.46.0269; RCW 9.46.220-.222.

36. Kalshi's nationwide platform directly contravenes Washington's express prohibition


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

on internet gambling and its strict limitation on sports wagering to in-person bets at authorized tribal facilities, thereby unlawfully transmitting "gambling information" (including real-time odds and wagers) via the internet. *See* RCW 9.46.0245; RCW 9.46.0368; RCW 9.46.240.

37. Finally, in facilitating this unlawful enterprise, Kalshi's website and mobile applications operate as unlicensed "gambling devices," and the digital trade histories and transaction logs generated by these activities constitute the maintenance of illegal "gambling records," allowing Kalshi to conduct, manage, and unlawfully profit from professional gambling in the state of Washington. RCW 9.46.0241; RCW 9.46.0253; RCW 9.46.215; RCW 9.46.217.

38. The above illegal conduct has, in fact, occurred with Washington residents and consumers.

39. By placing bets on Kalshi, a Washington resident would be violating the Washington Gambling Act.

40. At all relevant times, Kalshi knew or consciously avoided knowing that its services that it markets and provides to users in the state of Washington violate the Washington Gambling Act, including as described above.

**~~C.~~D. Kalshi's "Refer a friend" Program violates CEMA and the CPA.**

41. Kalshi's "Refer a friend" messages are commercial electronic mail messages. They promote Kalshi's betting platform. And they request that recipients sign up for Kalshi accounts.

42. Moreover, the "Refer a friend" messages are electronic mail messages because they are sent to consumers' electronic mail addresses and a reference to an internet domain to which an electronic mail message can be sent or delivered, which includes email and social media messaging applications.

43. For instance, Facebook Messenger messages constitute an electronic mail message because they are transmitted across the Internet—utilizing TCP/IP protocols to communicate digital text information via telecommunications facilities—routed through infrastructure bound to centralized Internet domain names (including facebook.com and messenger.com), and ultimately reach a user's Messenger account, which is expressed as a string of characters.


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

~~23.~~44. Through the "Refer a friend" program, Kalshi initiates and assists in the transmission of commercial electronic ~~commercial text~~mail messages to Washington residents~~ who have not clearly and affirmatively consented in advance to receive these text messages, and in fact have not consented to receive these text messages at all. Accordingly, Kalshi violates CEMA~~.

~~24. Kalshi's "Refer a friend" text messages are commercial. They promote Kalshi's trading platform. And, they require recipients to sign up for Kalshi accounts.~~

~~25.~~45. Kalshi initiates the transmission of the commercial "Refer a friend"~~ text~~ messages through its agents—i.e., its customers tasked with sending "Refer a friend" messages to their friends.

~~26.~~46. Kalshi users who use the "Refer a friend" process are agents of Kalshi. As described in further detail above, Kalshi grants users the right to send out referral ~~texts~~messages on its behalf. ~~It~~Kalshi creates the links and tells ~~Kalshi~~its users to send out the referral ~~texts~~messages. It also pays users rewards for referring friends.

~~27.~~47. When initiating the transmission of "Refer a friend" ~~text~~ messages to their contacts, Kalshi users are actual agents of Kalshi. Kalshi authorizes them to initiate the transmission of those ~~text~~ messages on Kalshi's behalf. Kalshi also controls the process for initiating the sending of ~~commercial text~~ messages to Washington residents described above. Via both its website and its app, Kalshi generates the referral links and referral web pages and directs existing customers to send the messages. And~~,~~ Kalshi pays existing users incentives for referring their friends, by offering lucrative referral bonuses.

~~28.~~48. Kalshi users are also apparent agents of Kalshi. As described in further detail above and below, Kalshi creates the impression that "Refer a friend~~ text~~" message recipients are actually dealing with Kalshi.

~~29.~~49. Kalshi also ratifies the initiation of the transmission of the ~~commercial text~~"Refer a friend" messages. Kalshi knows that users use the referral link (via both its mobile app and its website) to ~~text cell phone users~~send messages to people in Washington because it promotes its referral program nationwide, including in Washington, and knows that consumers nationwide and in Washington are likely to ~~text cell phone~~send the "Refer a friend" messages to users in Washington



Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

~~with these texts.~~. Kalshi also knows that the ~~text~~ messages are received by Washington residents, because it keeps track of the geographic location of the consumers who click the link and fill out the form, which has included Washington residents. ~~It also knows that recipients have not consented. Indeed, Kalshi fails to check whether the consumer has consented before directing its existing users to send the "Refer a friend" messages.~~

~~30.~~50. In addition, Kalshi assists existing users in transmitting ~~commercial text~~"Refer a friend" messages to Washington residents ~~who have not consented to receive the commercial text messages~~. As explained in further detail above, Kalshi provides substantial assistance and support that allows existing users to formulate, compose, send, and transmit the "Refer a friend" ~~text~~ messages. As further described above, via both its website and its app, Kalshi directs existing users to send the ~~text~~"Refer a friend" messages, generates links for sending, and assists users in copying, pasting, and sending the ~~text~~ messages. Kalshi also offers existing users lucrative referral bonuses for sending the ~~texts~~"Refer a friend" messages to Washington residents.

~~31.~~51. The ~~text~~"Refer a friend" messages Kalshi initiates through its agents, and assists in transmitting, are to Washington residents. Kalshi promotes its referral program nationwide, including to users in Washington, who are likely to send the ~~text~~"Refer a friend" messages to other Washington residents. In addition, users nationwide are likely to send ~~text~~the "Refer a friend" messages to Washington residents, such as their friends and family who live in Washington.

~~32.~~52. But for Kalshi initiating and assisting in transmitting the "Refer a friend" ~~text~~ messages, Washington residents would not receive them.

~~33. The Washington residents to whom the text messages are transmitted have not clearly and affirmatively consented in advance to receive these text messages.~~

~~34. Kalshi does not obtain clear and affirmative consent prior to the sending of these text messages. In fact, Kalshi does not communicate with the recipients prior to the texts being sent, much less obtain clear and affirmative consent.~~

~~35. In addition, Kalshi does not check whether the proposed recipient has in fact consented to commercial text messages from Kalshi, even though it could. Kalshi maintains records~~


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

~~that show which cell phone numbers have consented to commercial text messages from Kalshi. Thus, Kalshi could check whether a particular Washington cell phone number has—or has not—consented to commercial text messages from Kalshi. But Kalshi does not check whether a recipient has consent before sending the messages. Kalshi could, but does not, block the text messages from being sent to Washington state residents that have not given clear and affirmative consent.~~

~~36. Kalshi also fails to require existing users to obtain consent prior to sending the text messages on Kalshi's behalf. It does not ask its users who use its "Refer a friend" program to prove that they have obtained consent, or even to affirm that they have obtained consent, prior to sending the text messages.~~

~~37. Neither the web version nor the app version of Kalshi's "Refer a friend" program mention consent at all.~~

~~38.~~53. ~~Kalshi knows, or consciously avoids knowing, that its commercial "Refer a friend" text messages are being transmitted to Washington residents that have not clearly and affirmatively consented in advance to receive its referral text messages. As discussed in greater detail above,~~ Kalshi promotes its "Refer a friend" program nationally, including to existing users in Washington. Kalshi knows that existing users have contacts in Washington, and Kalshi knows and/or has reason to know that ~~they text~~ referral links ~~to~~ are sent from a computer in Washington ~~consumers.~~or to electronic mail addresses held by Washington residents. Kalshi also knows that the ~~text~~ messages are sent and/or received by Washington residents, including because it keeps track of which users send the links and which consumers click the referral ~~link~~links and fill out the form. ~~Kalshi also knows that recipients who receive the text messages have not clearly and affirmatively consented.~~

~~39. In addition, for the reasons described above, Kalshi knows or consciously avoids knowing that its existing users do not obtain clear and affirmative advance consent prior to texting their contacts. As described above, Kalshi knows that existing users do not obtain consent because the users are unaware that they are supposed to obtain consent prior to sending the messages (much less clear and affirmative consent to receive commercial text messages). But instead of requiring proof of consent, or prohibiting users from texting referrals without consent, Kalshi directs its~~



Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

~~customers to send texts to Washington residents, and offers lucrative referral fees for doing so. Kalshi benefits from the sending of illegal text messages to Washington residents, because it can advertise its products, target new customers, and make money from new users in Washington.~~

54. The Kalshi users who send the "Refer a friend" commercial electronic mail messages know, or have reason to know, that they are sending the messages to electronic mail addresses held by Washington residents, including these users are sending them to people that they personally know.

55. Kalshi also knows that recipients who receive the messages have not clearly and affirmatively consented.

56. Kalshi's "Refer a friend" messages violate CEMA because they contain false and/or misleading information in the subject line that was written by Kalshi: "[User] invited you to trade on Kalshi." This line is the subject line, including because it summarizes the message intent and is displayed prominently before the user engages with the body of the link.

57. But the Washington recipients are not being invited to "trade." They are being invited to gamble in violation of the Washington Gambling Act, including by risking money on contests of chance.

58. Kalshi's "Refer a friend" messages violate CEMA because Kalshi is initiating the transmission of commercial electronic mail messages from computers located in Washington, and those messages use a subject line that Kalshi knows contain false or misleading information in the subject line, based upon Kalshi's actual knowledge and/or upon knowledge fairly implied on the basis of objective circumstances.

59. Kalshi's "Refer a friend" messages violate CEMA because Kalshi is initiating the transmission of commercial electronic mail messages to electronic mail addresses that its users know, or have reason to know, are held by a Washington resident, and those messages use a subject line that Kalshi knows contain false or misleading information in the subject line, based upon Kalshi's actual knowledge and/or upon knowledge fairly implied on the basis of objective circumstances.

60. Kalshi's "Refer a friend" messages violate CEMA because Kalshi is conspiring with its users to initiate the transmission of commercial electronic mail messages from computers located in Washington, and those messages use a subject line that Kalshi knows contain false or misleading information in the subject line, based upon Kalshi's actual knowledge and/or upon knowledge fairly implied on the basis of objective circumstances.

61. Kalshi's "Refer a friend" messages violate CEMA because Kalshi is conspiring with its users to initiate the transmission of commercial electronic mail messages to electronic mail addresses that its users know, or have reason to know, are held by a Washington resident, and those messages use a subject line that Kalshi knows contain false or misleading information in the subject line, based upon Kalshi's actual knowledge and/or upon knowledge fairly implied on the basis of objective circumstances.

62. Kalshi's "Refer a friend" messages violate CEMA because Kalshi is assisting its users to initiate the transmission of commercial electronic mail messages from computers located in Washington, and those messages use a subject line that Kalshi knows contain false or misleading information in the subject line, based upon Kalshi's actual knowledge and/or upon knowledge fairly implied on the basis of objective circumstances.

63. Kalshi's "Refer a friend" messages violate CEMA because Kalshi is assisting its users to initiate the transmission of commercial electronic mail messages to electronic mail addresses that its users know, or have reason to know, are held by a Washington resident, and those messages use a subject line that Kalshi knows contain false or misleading information in the subject line, based upon Kalshi's actual knowledge and/or upon knowledge fairly implied on the basis of objective circumstances.

64. Kalshi's "Refer a friend" messages violate CEMA because Kalshi is initiating the transmission of commercial electronic mail messages that contain false or misleading information in the subject line.

65. Kalshi's "Refer a friend" messages violate CEMA because Kalshi is conspiring with its users to initiate the transmission of commercial electronic mail messages that contain false or


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

misleading information in the subject line.

66. Under RCW 19.190.30(3) and 19.190.40(1), a CEMA violation satisfies all the elements of a CPA claim for an unfair or deceptive act.

67. Moreover, Kalshi's "Refer a friend" messages violate CEMA because Kalshi is assisting in their transmission by Kalshi users, despite Kalshi knowing or consciously avoiding knowing that the Kalshi user initiating the message is engaged in practice that violates the CPA.

68. Foremost, transmitting the "Refer a friend" messages to consumers violates the CPA because it is an unfair and deceptive act. Among other things, the "Refer a friend" messages falsely convey that Kalshi's users are merely engaged in a "trade" rather than gambling, that Kalshi's service complies with Washington law, and that Kalshi's service can be lawfully used by Washington residents. Moreover, the "Refer a friend" messages induce Washington residents to violate Washington law, including by providing them with $25.00 to spend on illegal gambling. The "Refer a friend" messages omit that Washington residents in use Kalshi's service could be subject to civil disgorgement and other legal liability under Washington law. The "Refer a friend" messages also exploit peer-to-peer trust networks by offering financial bounties to co-opt users into coaxing friends and family into engaging in illegal gambling. Finally, the "Refer a friend" messages violate Washington's fundamental statutory public policy against illegal gambling, rendering the promotion of such services unfair regardless of deception.

69. The transmission of the "Refer a friend" messages occurred in the conduct of trade or commerce, including because Kalshi operates a commercial online betting platform and solicits users in order to collect transaction fees on wagers. The initiation, assistance, and transmission of the "Refer a friend" messages constitute the marketing of these commercial services, which directly or indirectly affects the people of the state of Washington.

70. The transmission of the "Refer a friend" messages affects the public interest for multiple reasons. First, CEMA provides that the practices covered by CEMA "vitally affect[s] the public interest for the purpose of applying the consumer protection act." RCW 19.190.30(3). Second, Kalshi's messages promote illegal and unlicensed gambling activities, which directly


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

undermines Washington's longstanding public policy of tightly regulating gambling to protect the health, welfare, and safety of its residents—including as set forth in the Washington Gambling Act. Third, Kalshi's mass transmission of these promotional messages demonstrates a pattern of conduct committed in the course of its business, for which there is a real and substantial potential for repetition, thereby impacting the public interest.

71. Finally, the injury and causation elements of a CPA are satisfied under CEMA, including pursuant to RCW 19.190.030 and 19.190.040. *See Wright v. Lyft, Inc.*, 189 Wash. 2d 718, 732 (2017) ("We conclude that RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law."). Because Kalshi's conduct violates CEMA and satisfies all elements of a CPA violation, Plaintiff is entitled to recover the statutory damages provided for in RCW 19.190.040 for each Commercial electronic mail message sent in violation of the statute.

72. For the purposes of this law, under CEMA, it is irrelevant whether the Commercial electronic mail messages were consented to.

73. Nevertheless, through the "Refer a friend" program, Kalshi initiates and assists in the transmission of commercial electronic mail messages to Washington residents who have not clearly and affirmatively consented in advance to receive these messages, and in fact have not consented to receive these messages at all.

~~40.~~74. Plaintiff received illegal referral ~~text~~ messages from Kalshi~~,~~ and was harmed by Kalshi's referral ~~text~~ messaging practices.

~~41.~~75. On Friday, February 6, 2026, Plaintiff received an unsolicited ~~text~~"Refer a friend" Facebook Messenger message inviting him to sign up for a Kalshi account, while a resident of Ephrata, Washington.



Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

~~42.~~76. A screenshot of the ~~text~~“Refer a friend” message is shown below:




~~43.~~77. This message could not have been sent in its specific format (including the generated image and link) without Kalshi’s software and assistance.

78. Kalshi provided and composed the content for the message sent to Plaintiff, as it did with all “Refer a friend” messages pertinent to this action, including the message’s statements offering $25.00 and the subject line that falsely, unfairly, and deceptively portrays Kalshi as a platform to make “trade[s]” rather than gamble, as well as the link to sign up.

~~44.~~79. Plaintiff did not provide clear and affirmative consent to receive the promotional or marketing ~~material~~message from Kalshi ~~via text message~~.

~~45.~~80. The ~~text~~“Refer a friend” message contained text that was composed by Kalshi~~.~~, including the subject line that Plaintiff was “invited . . . to trade on Kalshi.” (Emphasis added). In addition, the link is from Kalshi and directs the recipient to a page at Kalshi.com. It contains an image generated by Kalshi depicting the money that the recipient could receive from Kalshi by

signing up. In short, based on all information available to him-, Plaintiff reasonably believed, as do other reasonable consumers, that he was dealing with Kalshi and Kalshi's promotion, and that his contact was sending him a Kalshi promotion via texta message on Kalshi's behalf.

81. The Facebook message that Plaintiff received was an electronic message (see above) sent to an electronic mail address (his Facebook messenger address) with a reference to the facebook.com and/or messenger.com internet domains.

46.82. But for Kalshi's initiating and assisting in transmitting the text"Refer a friend" message, Plaintiff would not have received it.

47.83. Plaintiff had no means of opting out of receiving the unsolicited commercial text"Refer a friend" message, and he still has no means of opting out of future referral messages. So, Plaintiff faces an imminent threat of future harm. But withoutWithout an injunction, Plaintiff has no realistic way to stop the transmission of future Kalshi referral messages, including to his personal cellular phone numberand other electronic mail messaging devices and applications.

84. The "Refer a friend" message Plaintiff received violated CEMA and the CPA, as described above.

85. Plaintiff was harmed by the "Refer a friend" message that he neither consented to or authorized, including because it occupied storage space on his cellular device, utilized the devices computational resources, and took Plaintiff's time.

86. Under CEMA, the "Refer a friend" message Plaintiff received caused injury.

**V. Class Action Allegations.**

48.87. Plaintiff brings the asserted claims for the following Class: all persons who, within the applicable statute of limitations period and without having given advance clear and affirmative consent, received a Kalshi "Refer a friend" textelectronic mail message inviting them to their cellular telephone number"trade" while residing in Washington.

49.88. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Kalshi, Kalshi's subsidiaries, parents, successors, predecessors, and any entity in which the Kalshi or its parents have


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Kalshi's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity & Ascertainability**

~~50.~~89. The proposed class ~~contains~~ members are so numerous that separate joinder of each member of the class is impractical. There are tens of thousands or more class members.

~~51.~~90. Class members can be identified through Kalshi's records and public notice.

**Predominance of Common Questions**

~~52.~~91. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation: (1) whether Kalshi's "Refer a friend" ~~text~~ messages are commercial ~~text~~electronic mail messages; (2) whether Kalshi violated CEMA and the ~~Washington Consumer Protection Act~~CPA through its "Refer a friend" messages, and (3) whether class-wide injunctive relief is necessary to prevent harm to Plaintiff and the class.

**Typicality & Adequacy**

~~53.~~92. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff received ~~an unwanted~~a commercial ~~text~~electronic mail message ~~sent to his telephone number~~ on behalf of Kalshi. There are no conflicts of interest between Plaintiff and the class.

**Superiority**

~~54.~~93. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of ~~millions~~thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI. Claims.**

**Count I: Violation of the Washington Commercial Electronic Mail Act: RCW §19.190 ~~et seq~~.**

~~55.~~94. Plaintiff incorporates each and every factual allegation set forth above.

56.95. Plaintiff brings this cause of action on behalf of himself and members of the Class.

57. CEMA states, in relevant part, "no person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a Washington resident" unless the recipient has "clearly and affirmatively consented in advance to receive these text messages." RCW §§ 19.190.060-19.190.070.

58. Kalshi is a "person," as the term is defined by RCW § 19.190.010(11). Kalshi is a corporation, and the statute's definition of "person" includes a "corporation."

59. Kalshi is a person "conducting business in the state" of Washington, as used in RCW §19.190.060. Kalshi conducts business transactions within this state. Kalshi advertises and sells its products and services to customers in this state, and serves a market for its products and services in this state.

60. As alleged in detail above, Kalshi's referral text messages are a "commercial text message" under CEMA. They promote and advertise Kalshi's prediction market trading platform.

61. As alleged in further detail above, Kalshi also violates CEMA by initiating and assisting in the transmission of commercial text messages to Washington residents who did not clearly and affirmatively consent in advance to receive the text messages. As described in further detail above, users who sent the text messages to their contacts (pursuant to the Kalshi "Refer a friend" program) were actual and/or apparent agents of Kalshi. Kalshi ratified the actions of its users (i.e. the sending of the text messages as described above).

62. As alleged in further detail above, Kalshi violates CEMA by initiating and assisting in the transmission of commercial electronic text messages to Washington residents who did not clearly and affirmatively consent in advance to receive the text messages. As described in further detail above, through its "Refer a friend" feature on its app and website, Kalshi composes text messages and referral links for its users to share via text messaging with othersCommercial electronic mail messages result in several CEMA violations, including Washington residents who have not consentedpursuant to receive them.

63.96. Kalshi knew, or should have known, that the text messages were transmitted to



Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

Washington residents who have not "clearly and affirmatively consented in advance to receive these ~~text messages."~~ RCW ~~§~~ 19.190.~~070~~020(1)(b~~). As described in further detail above, Kalshi does not require the existing users to obtain the necessary clear and affirmative prior consent before sending the referral texts. And, the existing users do not obtain the consent. Kalshi itself does not obtain the required consent prior to initiating and assisting in the transmission. In addition, as described in further detail above, Kalshi markets its "Refer a friend" promotion nationwide, including to residents in Washington. Kalshi further knows which Washington cell phone numbers have consented to receive commercial text messages from it. Despite this, Kalshi does not check to see whether a Washington consumer has consented to receive the messages, prior to initiating and assisting in sending the Refer a friend messages.~~), RCW 19.190.030(1)(b), and RCW 19.190.030(2).

~~64. As described in further detail above, Kalshi knew, or should have known, that these text messages were sent to telephone numbers assigned to Washington residents for cellular telephone service equipped with short message service.~~

~~65. As described in further detail above, Kalshi initiated and assisted in the transmission of unsolicited text messages to Plaintiff and other members of the class. Plaintiff and class members received the text messages.~~

~~66. Kalshi's referral text messaging practices were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the class.~~

~~67. Plaintiff and the Washington class were injured as a direct and proximate result of Kalshi's conduct because (a) they have received an unsolicited commercial electronic text message that Kalshi initiated and assisted in transmitting to their assigned telephone number; and (b) they never provided clear and affirmative consent in advance to receive the commercial electronic text messages.~~

~~68. Plaintiff seeks actual or statutory damages of $500 per class member, whichever is greater, reasonable attorneys' fees, treble damages, and all other available relief.~~

97. Kalshi's acts and omissions injured Plaintiff and proposed Class members. The balance of the equities favors the entry of permanent injunctive relief against Kalshi. Plaintiff, the


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

members of the Class and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Kalshi. A permanent injunction against Kalshi is in the public interest. Kalshi's unlawful behavior is, based on information and belief, ongoing as of the date of the filing of this pleading; absent the entry of a permanent injunction, Kalshi's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

98. Plaintiffs and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

**Count II: Violation of the Washington Consumer Protection Act: RCW ~~§~~19.86.**

~~69.~~99. Plaintiff incorporates each and every factual allegation set forth above.

~~70.~~100. Plaintiff brings this cause of action on behalf of himself and members of the Class.

~~71.~~101. Kalshi has violated the Washington Consumer Protection Act (CPA), RCW Chapter 19.86.

~~72. Section 19.86.020 of the CPA states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW § 19.86.020.~~

~~73. Under the CPA, a private right of action "may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW § 19.86.090.~~

~~74.~~ As alleged in ~~further~~more detail above, ~~Kalshi violates CEMA by initiating~~Kalshi's initiation, conspiring in the initiation, and/or assisting in the initiation of the transmission of the "Refer a friend" commercial electronic ~~text~~mail messages ~~to Washington residents who did not clearly and affirmatively consent in advance to receive the text messages. As described in further detail above, Kalshi violates CEMA through its "Refer a friend" program on its app and website.~~

~~75. As described in further detail above, Kalshi initiated and assisted in the transmission of unsolicited text messages to Plaintiff and other members of the class. Plaintiff and class members~~

~~received the text messages.~~

~~76. Kalshi's referral text messaging practices were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the class.~~

~~77. Plaintiff and the Washington class were injured as a direct and proximate result of Kalshi's conduct because (a) they have received~~with false and/or misleading subject lines is a violation of CEMA and is an ~~unsolicited commercial electronic text message that Kalshi initiated and assisted in transmitting to their assigned telephone number; and (b) they never provided clear and affirmative consent in advance to receive the commercial electronic text messages.~~

~~78. Plaintiff seeks actual or statutory damages of $500 per class member, whichever is greater, reasonable attorneys' fees, treble damages, and all other available relief.~~

~~79.~~102. ~~Violations of the CEMA are "not reasonable in relation to the development and preservation of business" and are an "~~unfair or deceptive act ~~in trade or commerce and an unfair method of competition"~~ for the ~~purpose~~purposes of ~~applying the~~a CPA~~.~~ claim. See RCW ~~§~~ 19.190.~~100.~~20(1)(b) and 19.190.30(1)(b) & (3).

103. Also, as alleged in more detail above, Kalshi's assisting in the initiation of the transmission of the "Refer a friend" commercial electronic mail messages that violate the CPA is a violation of CEMA and is an unfair or deceptive act for the purposes of a CPA claim. RCW 19.190.30(2) & (3).

104. These violations of CEMA's constitute per se unfair and deceptive acts ~~or omissions~~within the meaning of the Consumer Protection Act.

105. Also, as alleged in more detail above, the transmission of the "Refer a friend" messages violates the CPA, including because the messages are ~~injurious to~~ unfair and deceptive acts in trade or commerce under RCW 19.86.020.

106. Kalshi's "Refer a friend" messages vitally affect the public interest ~~because these practices were committed in~~and have a real and substantial potential for repetition.

107. The CEMA violations establish the ~~course~~injury and causation elements of a CPA claim as a matter of law. See RCW 19.190.040.



Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

108. Because Kalshi's ~~business and were committed repeatedly before and after~~conduct violates CEMA and satisfies all elements of a CPA claims as a matter of law, Plaintiff ~~received a commercial electronic text~~and Class members are entitled to recover statutory damages of $500[6] for each Commercial electronic mail message ~~that was transmitted through assistance from~~ sent in violation of the statute. The full amount of damages will be proven at trial. Plaintiffs and Class members are entitled to recover actual damages and treble damages, together with reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.

~~80.~~109. Under the CPA, Plaintiff and Class members are also entitled to, and do seek, permanent injunctive relief prohibiting Kalshi~~. These actions have injured other persons, and, if continued, have the capacity to injure additional persons~~ from violating the CPA in the future.

## VII. Jury Demand.

~~81.~~110. Plaintiff demands the right to a jury trial on all claims so triable.

## VIII. Prayer for ~~relief~~Relief.

~~82.~~111. Plaintiff seeks the following relief for himself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, including statutory damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Kalshi's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

[6] After this lawsuit was commenced, the damages amount was reduced to $100.


Kothari Law LLC
555 SE Martin Luther King Blvd
Suite 3022
Portland, OR 97214

Dated: ~~April 24~~August 21, 2026 Respectfully submitted,

By: */s/ Jonathan D. Grunberg*

Natalya P. Maze
~~npm@mazelawgroup.com~~
npm@mazelawgroup.com
MAZE LAW GROUP PLLC
1600B SW Dash Point Rd. #127
Federal Way, WA 98023
Telephone: 206-355-6314

Vivek Kothari (admitted *pro hac vice* ~~application forthcoming~~)
vivek@kothari.law
KOTHARI LAW
555 SE Martin Luther King Blvd.
Portland, OR 97214
Telephone: 503-567-6735

Jonathan D. Grunberg (admitted *pro hac vice*)
jgrunberg@wgwlawfirm.com
WADE, GRUNBERG & WILSON, LLC
3100 Cumberland Blvd SE,
STE. 1130
Atlanta, GA 30339
Telephone: 404-600-1153

*Attorneys for Plaintiff*