**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

NICHOLAS BROWN, individually and on behalf of all others similarly situated,

*Plaintiff,*

v.

KALSHI INC.,

*Defendant.*

Case No. 2:26-cv-1426-LK

**DEFENDANT KALSHI INC.'S REQUEST TO CONSIDER DOCUMENTS INCORPORATED BY REFERENCE INTO THE FIRST AMENDED COMPLAINT & FOR JUDICIAL NOTICE**

Hon. Lauren King

NOTE ON MOTION CALENDAR:
December 11, 2026



QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

## INTRODUCTION

In connection with its concurrently filed Motion to Dismiss the First Amended Complaint ("FAC") and, in the Alternative, to Strike Class Allegations (the "Motion to Dismiss"), defendant Kalshi Inc. ("Kalshi") respectfully requests that the Court (i) consider Exhibits #1-6 to the First Declaration of Brian Ta in Support of Kalshi's original Motion to Dismiss (ECF No. 20, as corrected at ECF No. 26) (the "First Ta Declaration") as well as Exhibits #1-3 to the Second Declaration of Brian Ta in Support of the Motion to Dismiss (the "Second Ta Declaration") as incorporated into the FAC by reference; and (ii) take judicial notice of Exhibits #1-6 to the Declaration of Nicolas G. Keller in Support of that motion (ECF No. 21) (the "Keller Declaration"). *See also* ECF No. 22.

## BACKGROUND

### A. The *Complete* Referral Process Is Central To The First Amended Complaint

Plaintiff's claims in this action arise exclusively from the alleged operation of Kalshi's "refer a friend" ("RAF") program, whereby Kalshi allegedly "provides substantial assistance and support" to the transmission of purportedly unwanted commercial electronic mail messages. *See* FAC ¶ 50; *see id.* ¶¶ 22-29. Indeed, plaintiff's claims depend entirely on a single referral message he allegedly received on February 6, 2026, from one of his Facebook contacts (not Kalshi). *See id.* ¶¶ 75-76. Plaintiff asserts the message at issue "contained text that was composed by Kalshi" as well as "an image generated by Kalshi" and "could not have been sent in its specific format . . . without Kalshi's software and assistance." *Id.* ¶¶ 77, 80. The precise, step-by-step mechanics of the RAF program referral flow—which button is pressed, by whom, and what outcome results—are therefore at the very heart of the FAC.

Tellingly, however, the FAC is often conspicuously silent or vague as to these critical contextual details. The few times the FAC reproduces purported screenshots from the referral flow, it does so only for isolated frames and, if it describes the surrounding or intermediate steps at all, it does so only in conclusory terms. *See, e.g.*, *id.* ¶¶ 22-29. Plaintiff thereby omits or handwaves steps that, when viewed in their full context, are material to his own theory. For

instance, the FAC alleges that clicking the "Share link" button on Kalshi's mobile application "creates a message," *id*. ¶ 25, but it neither depicts nor describes the immediate step that the "Share link" button actually triggers, which is the mobile device's own native "share" interface—a process generated and controlled by the device's operating system, not by Kalshi. *See* Second Ta Decl., Exs. 1-2.

As another example, the FAC sidesteps whether Kalshi's desktop website provides a referral link and message, or just a link. At some points, the FAC equates the referral flow on the website with that on the mobile app: "via both its ***website*** and its app, Kalshi directs existing users to ***send the 'Refer a friend' messages***, generates links for sending, and assists users in copying, pasting, and sending the messages,"[1] FAC ¶ 50. Yet, when describing the website referral flow specifically, plaintiff alleges only that, "After the user clicks the 'Invite friends' button, Kalshi generates a ***referral link***, and directs existing users to copy the ***referral link***," *id.* ¶ 27—without any depiction or description of any message allegedly authored by Kalshi. Perhaps not wanting to concede the point, however, plaintiff then ambiguously alleges in conclusory fashion that, "Existing users copy the ***referral link***, paste it into a messaging platform, and ***send the messages and link*** to their friends." *Id.* ¶ 28. Plaintiff's use of the imprecise term—send ***"the"*** messages—invites the reader to infer that Kalshi's website involves message composition or initiation in some way without ever outright saying so, much less showing it. Plaintiff's own pleading therefore leaves only one way to decipher the meaning of his allegations: to review the mobile and website RAF program referral flows unbroken and in their entireties.

Those complete, step-by-step mobile and website referral flows on which the FAC's claims wholly depend are reflected in Exhibits #1-6 to the First Ta Declaration, as further described in ECF No. 22 and § II, *infra*, as well as Exhibits #1-3 to the Second Ta Declaration:

- **Second Ta Decl., Ex. 1** is a true and correct copy, based on Kalshi internal records, of a demonstrative sequence of screens a Kalshi user would have seen outside of

---

[1] All emphases herein are added unless otherwise noted.

the Kalshi mobile app when sending a referral link to a contact, using Facebook Messenger on an Apple mobile device, on or about February 6, 2026, after adjusting the sample referral message language pursuant to paragraph 11 of the Second Ta Declaration.

- **Second Ta Decl., Ex. 2** is a true and correct copy, based on Kalshi internal records, of a demonstrative sequence of screens a Kalshi user would have seen outside of the Kalshi mobile app when sending a referral link to a contact, using Facebook Messenger on an Android mobile device, on or about February 6, 2026, after adjusting the sample referral message language pursuant to paragraph 11 of the Second Ta Declaration.
- **Second Ta Decl., Ex. 3** is a true and correct copy, based on Kalshi internal records, of a demonstrative sequence of screens a Kalshi user would have seen outside of the Kalshi desktop website when sending a referral link to a contact, using Facebook Messenger on a desktop computer or laptop, on or about February 6, 2026.

## LEGAL STANDARD

On a motion to dismiss, a court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Under the incorporation-by-reference doctrine, "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("Under the 'incorporation by reference' doctrine in this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment."). Documents incorporated by reference in this manner are treated "as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

The doctrine aims to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (cleaned up). It precludes plaintiffs from "select[ing] only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. Courts "decline to close [their] eyes . . . and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because the plaintiff has chosen not to attach the [document] to the complaint or to incorporate it by reference." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (cleaned up); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material.").

## <u>ARGUMENT</u>

### I. THE FAC INCORPORATES THE SECOND TA DECLARATION EXHIBITS #1-3 BY REFERENCE

In evaluating Kalshi's Motion to Dismiss, the Court should consider Exhibits #1-3 to the Second Ta Declaration as incorporated into the FAC by reference. Because plaintiff's theory turns on how the RAF program referral process works, it plainly "forms the basis of the plaintiff's claim" and is therefore incorporated by reference. *Khoja*, 899 F.3d at 1002 ("[T]he plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.") (citation omitted); *see, e.g.*, *Gray v. Twitter, Inc.*, 2021 WL 11086642, at *2 (W.D. Wash. Mar. 17, 2021) (incorporating the "user-facing systems" and account-management "screens" on which the claim relied); *Fife v. Sci. Games Corp.*, 2018 WL 6620485, at *2 (W.D. Wash. Dec. 18, 2018) (incorporating the entire app where the claim "turns on the overall functioning and design of the app").

Additionally, plaintiff's selective presentation of the referral flow is precisely what the incorporation-by-reference doctrine is intended to remedy, such that the Court is empowered to "take into account 'all parts of the communication that are ordinarily heard or read'" together.

*Knievel*, 393 F.3d at 1076 ("[A] viewer accessing the . . . photograph must also access the surrounding pages."). Exhibits #1-3 supply that complete sequence and place the FAC's allegations in their full context, just as the incorporation-by-reference doctrine requires. *See, e.g.*, Second Ta Decl., Exs. 1-3.

## II. THE EXHIBITS SUBMITTED WITH KALSHI'S ORIGINAL MOTION TO DISMISS REMAIN INCORPORATED INTO, AND JUDICIALLY NOTICEABLE IN CONNECTION WITH, THE FAC

The First Amended Complaint re-alleges the same "refer a friend" program, and relies on the same referral-flow mechanics, as the original Complaint. *See* FAC ¶¶ 22-29, 77-78, 80. As the Second Ta Declaration confirms, the FAC "depicts and discusses the Kalshi 'refer a friend' feature that existed on or about February 6, 2026, and users' use thereof, as did the now-superseded original complaint." Second Ta Decl. ¶ 5. Because plaintiff's claims continue to turn on how the RAF program referral process works, the exhibits Kalshi submitted with its original motion bear the same relationship to the operative FAC that they bore to the original Complaint, and the analysis in Kalshi's original Request to Consider Documents Incorporated by Reference and for Judicial Notice (ECF No. 22) applies with equal force to the FAC.

Kalshi therefore renews and re-asserts that request as to the FAC and in connection with the concurrently filed Motion to Dismiss, and incorporates the supporting briefing in ECF No. 22 here. Specifically, Kalshi respectfully requests that the Court consider Exhibits #1-6 to the First Declaration of Brian Ta (ECF No. 20, as corrected at ECF No. 26)—the complete, step-by-step mobile and website referral flows, together with the referral sign-up webpage—as incorporated by reference into the FAC, for the same reasons the doctrine applied to the original Complaint. *See Khoja*, 899 F.3d at 1002; *Ritchie*, 342 F.3d at 908. The content of the First Ta Declaration remains accurate. *See* Second Ta Decl. ¶ 3.

Kalshi likewise renews its request that the Court take judicial notice of Exhibits #1-6 to the Declaration of Nicolas G. Keller (ECF No. 21)—the complaints filed in other "refer a friend" actions in this District (Exhibits #1-4) and the public documentation of mobile operating-system

"share" functionality (Exhibits #5-6)—for the reasons stated in ECF No. 22. Those materials remain subject to judicial notice as matters of public record and as sources whose accuracy cannot reasonably be questioned, and the FAC implicates them to the same extent the original Complaint did. *See* Fed. R. Evid. 201(b)(2), (c)(2).

**CONCLUSION**

For the foregoing reasons, and in connection with its Motion to Dismiss, Kalshi respectfully requests that the Court (i) consider Exhibits #1-6 to the First Ta Declaration and Exhibits #1-3 to the Second Ta Declaration incorporated by reference into the FAC; and (ii) take judicial notice of Exhibits #1-6 to the Keller Declaration.

Dated: October 2, 2026

By: /s/ Matthew Hosen
Matthew Hosen
matthosen@quinnemanuel.com
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel: (206) 905-7000
Fax: (206) 905-7100

Avi Perry*
aviperry@quinnemanuel.com
Rachel Frank Quinton*
rachelquinton@quinnemanuel.com
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, D.C. 20004
Tel: (202) 538-8000
Fax: (202) 538-8100
(*Admitted *Pro Hac Vice*)

John W. Baumann*
jackbaumann@quinnemanuel.com
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Tel: (213) 443-3000

Fax: (213) 443-3100
(*Admitted *Pro Hac Vice*)

Nicolas G. Keller*
nicolaskeller@quinnemanuel.com
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000
Fax: (212) 849-7100
(*Admitted *Pro Hac Vice*)

*Attorneys for Defendant*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7(e)(3), I certify that this memorandum contains 1,895 words and therefore does not exceed 4,200 words.

Dated: October 2, 2026

By: */s/ Matthew Hosen*
Matthew Hosen